565 So.2d 1348 (1990)
Johnny COPELAND, Petitioner,
v.
Richard L. DUGGER, Respondent.
Johnny COPELAND, Appellant,
v.
STATE of Florida, Appellee.
Nos. 69428, 69482.
Supreme Court of Florida.
July 26, 1990.
Rehearing Denied September 20, 1990.
*1349 Marc E. Taps, Tallahassee, and Jay Topkis, Eric M. Freedman and Richard A. Rosen of Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for respondent/appellee.
PER CURIAM.
We have on remand from the United States Supreme Court the case of Copeland v. Dugger, 484 U.S. 807, 108 S.Ct. 55, 98 L.Ed.2d 19 (1987), reversing Copeland v. Wainwright, 505 So.2d 425 (Fla. 1987). We have jurisdiction. Art. V, § 3(b)(1, 7 & 9), Fla. Const.[1]
The sole issue presented by this remand is whether the sentencing hearing that resulted in Johnny Copeland receiving a death sentence met the requirements of Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). In its brief the state concedes the existence of a Hitchcock error but argues it was harmless in the context of this case. See Delap v. Dugger, 513 So.2d 659 (Fla. 1987).
The record before us presents a wide array of potential mitigating evidence regarding Copeland. This includes evidence that Copeland had responded positively to incarceration, see McCampbell v. State, 421 So.2d 1072, 1075-76 (Fla. 1982); that he was capable of rehabilitation in prison, see Cooper v. State, 526 So.2d 900 (Fla. 1988); that he was mentally retarded, see Eddings v. Oklahoma, 455 U.S. 104, 107, 102 S.Ct. 869, 872, 71 L.Ed.2d 1 (1982); Brown v. State, 526 So.2d 903, 908 (Fla.), cert. denied, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 361 (1988); and that Copeland suffered remorse for the murder so severe that he became psychotic. See Mikenas v. Dugger, 519 So.2d 601, 602 (Fla. 1988).
Although some of this evidence could be placed in doubt by proper cross-examination, we nevertheless must conclude that the potential body of mitigating evidence is impressive in this case. The state already has conceded that the jury was misinstructed on the proper role of nonstatutory mitigating evidence, in violation of Hitchcock. We also must agree with Copeland that this record simply is unclear as to whether the trial court knew it could consider nonstatutory mitigating evidence.
Indeed, the trial court's written order expressly confines its consideration to the statutory mitigating factors. Even the discussion of whether Copeland's accomplice was the dominant partner is couched exclusively in terms of the applicability of the statutory factors. We thus find reasonable doubt as to whether the trial court gave the proper consideration to the nonstatutory mitigating evidence arguably *1350 available in the record. See Rogers v. State, 511 So.2d 526, 534 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
Finally, we note that the state in its reply brief has asked this Court to adopt a special procedure for reviewing the Hitchcock error it concedes in this case:
Circuit Court judges should not be publicly accused and found guilty of violating the Constitutional rights of any litigant without receiving the (judicial, if nothing else) courtesy of a chance to defend themselves prior to reversal.
If this Court should find this record insufficient (but we suggest it is not), a special master should be appointed to determine whether Lockett was violated by the sentencer.
We certainly respect the sentiments underlying this request but must note that it misconceives the entire nature of the appellate process. This Court itself was reversed for violating the Constitution in Hitchcock. No special master was appointed nor were we summoned to Washington to explain ourselves. Indeed, it would be improper for a judge to assume the role of an advocate arguing in a public forum for the correctness of some particular opinion already issued.
More to the point, our mistake in Hitchcock was an honest one based on a reasonable interpretation of the law as it existed at the time. Similarly, by reversing our own lower courts, the Supreme Court of Florida in no sense implies that any judicial officer is "guilty" of anything. Errors of law are assumed to occur in good faith. The trial court below, just like this Court in Hitchcock, acted under a reasonable interpretation of the law  one that subsequently has been rejected by the United States Supreme Court.
In view of this change in the law, a new sentencing hearing must be held. The state has conceded error and it thus is this Court's responsibility, not that of a special master, to determine whether that error is harmless.
For the foregoing reasons, we conclude that the state has failed to meet its burden of proving harmless error beyond a reasonable doubt. We thus have no choice but to vacate the sentence of death and remand for a new sentencing hearing before a jury in compliance with the requirements of Hitchcock and Rogers.
It is so ordered.
SHAW, C.J., and EHRLICH, BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., concurs in result only.
OVERTON, J., dissents.
NOTES
[1] The facts of the case are recited in Johnny Copeland's direct appeal. Copeland v. State, 457 So.2d 1012 (Fla. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324 (1985).