580 So.2d 127 (1991)
William Thomas ZEIGLER, Jr., Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 74663.
Supreme Court of Florida.
April 11, 1991.
Rehearing Denied June 12, 1991.
*128 Samuel W. Murphy, Jr. of Davis, Markel & Edwards, New York City, and Steven L. Winter, Yale Law School, New Haven, Conn., for appellant/cross-appellant.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee/cross-appellant.
PER CURIAM.
William Thomas Zeigler Jr. appeals his sentence of death for the first-degree murders of his wife, Eunice Zeigler, and a Charles Mays. The State of Florida cross-appeals the trial judge's failure to find an aggravating circumstance. In Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982), we affirmed Zeigler's convictions for the first-degree murders of Eunice and Mays and the second-degree murders of Eunice's parents, Perry and Virginia Edwards.[1] In that case, we detailed the facts of how Zeigler, over the course of several hours, lured his wife, her parents, and Mays to Zeigler's furniture store where he killed them. We also affirmed Zeigler's death sentence in that case. Subsequently, however, we vacated the death sentence due to Hitchcock[2] error. Zeigler v. Dugger, 524 So.2d 419 (Fla. 1988). We ordered that the new sentencing proceeding be held before only a judge because the jury had recommended life imprisonment. Id. The judge again imposed the death penalty. We have jurisdiction on this appeal under article V, section 3(b)(1) of the Florida Constitution.
On remand, the new trial judge reviewed the transcript of the original case and heard a substantial amount of defense evidence as well as some evidence presented by the state. The judge then imposed the death penalty, finding in aggravation that: 1) Mays's murder was especially heinous, atrocious, or cruel; 2) both murders were committed for pecuniary gain; 3) Mays's murder was for the purpose of avoiding lawful arrest; and 4) Zeigler had been previously convicted of another capital felony or a felony involving the use of violence.[3] The judge also stated that he would have found the murders to be cold, calculated, and premeditated except that he believed that the application of that factor would violate the prohibition against ex post facto laws. The judge found statutory mitigation of no significant history of prior criminal activity.[4] The judge also considered evidence of nonstatutory mitigation, but concluded that "no reasonable person could conclude that the mitigating circumstances outweigh the proven aggravating circumstances."
The first claim we address on this appeal is Zeigler's claim that the trial judge improperly found four aggravating circumstances. Zeigler argues that the facts do not support the judge's finding that Mays's murder was especially heinous, atrocious, or cruel. He also argues that the evidence does not support the findings that Eunice and Mays were murdered for pecuniary gain and that Mays was murdered to avoid lawful arrest. Finally, he argues that the contemporaneous murders cannot support the finding that he was previously convicted of another violent or capital felony. We reject these arguments.
In support of his finding that Mays's murder was especially heinous, atrocious, or cruel, the judge wrote:
Charles Mays was shot twice, neither being the cause of death, and while still alive and struggling he was beaten savagely on the head with a blunt instrument.
*129 This finding is supported by the medical examiner's testimony. We agree with the trial judge that these facts are sufficient to apply this aggravating factor. See Bruno v. State, 574 So.2d 76 (Fla. 1991); King v. State, 436 So.2d 50 (Fla. 1983), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 163 (1984). We have previously held that the application of this aggravating factor is not arbitrary and capricious. Smalley v. State, 546 So.2d 720 (Fla. 1989).
We also uphold the finding that Eunice's and Mays's murders were committed for pecuniary gain. The trial judge found:
A major reason (although probably not the only reason) the murder of Eunice Zeigler was committed was to collect $500,000.00 in insurance benefits. The murder of Charles Mays was committed in furtherance of this plot. Both murders were therefor committed for pecuniary gain.
The Defense claims the Defendant's purchase of $500,000.00 of insurance on the life of his wife was in furtherance of an estate plan. The evidence established the Defendant was a prudent businessman. The majority of the business assets were owned by Defendant and his mother and father. Defendant purchased $500,000.00 of insurance on his wife while attempting to maintain only about $250,000.00 on his own life, although he was required to purchase an additional $250,000.00 on his life in order to obtain the additional $250,000.00 on his wife. The purchase of $500,000.00 on the life of Eunice Zeigler was not a reasonable and prudent amount for estate planning purposes. The Defendant never advised his estate planning advisor or his attorney of the purchase of the insurance on his wife even though he had many opportunities to do so and both of them had previously discussed estate planning with him.
Based on the evidence, the judge could reject Zeigler's assertion that he reasonably purchased the insurance for estate-planning purposes.[5] Further, the evidence supports the judge's finding that this aggravating factor was proven beyond a reasonable doubt.[6]
The third aggravating factor that Zeigler challenges is the finding that he committed Mays's murder to avoid lawful arrest. In support of his claim, he argues that this Court has previously held that "where the victim is not a law enforcement officer, the state must prove beyond a reasonable doubt that the dominant motive for the murder was the elimination of a witness." Correll v. State, 523 So.2d 562, 567 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988). However, this Court has never before considered a situation such as this where one of the victims was murdered in order to make it appear that that victim committed the crimes actually committed by the defendant. We hold that such situations can support the finding that the murder was committed to avoid lawful arrest. Under the facts of this case, we believe the evidence supports the finding of this aggravating circumstance beyond a reasonable doubt. Zeigler murdered Mays in order to make it appear that Mays and some confederates killed Eunice and her parents during a robbery and that Mays's confederates then killed him.
Zeigler also challenges the judge's finding that he had previously been convicted of another capital or violent felony based on the four contemporaneous murders. In effect, the judge found that as to both Eunice's and Mays's murders that Zeigler had already been convicted of the other three murders. In Correll, we held that this aggravating factor was properly applied in a case such as this where the contemporaneous crimes were committed upon separate victims.
*130 In addition to the four aggravating factors that we have upheld, the state claims that the trial judge should also have applied the cold, calculated, and premeditated aggravating factor. Although he determined the facts supported such a finding,[7] the judge did not apply this aggravating factor because he believed that it would violate the prohibition against ex post facto laws because Zeigler committed this crime and was originally sentenced before this aggravating factor was enacted. In Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982), this Court held that the prohibition against ex post facto laws is not violated by applying the cold, calculated, and premeditated aggravating factor to a murder committed before the legislature enacted that aggravating factor. We determined that the factor could be constitutionally applied to a crime committed before the factor was enacted because the statute only reiterated an element already present in the crime of premeditated murder. Id. at 421. Premeditation was not an entirely new factor. Therefore, the use of the factor in this case does not violate the ex post facto laws. See also Justus v. State, 438 So.2d 358 (Fla. 1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1332, 79 L.Ed.2d 726 (1984). Further, this analysis is not affected by the fact that this case involves a resentencing. Douglas v. State, 575 So.2d 165 (Fla. 1991).
Zeigler's next claim is that the trial judge did not give proper weight to the evidence he offered of nonstatutory mitigation. He argues the judge should have given more weight to the evidence of his church and community involvement as well as to that of his good character. The trial judge summarized his findings as to this mitigation as follows:

Good, Compassionate Character. The Defense presented several friends of the Defendant who testified to his good reputation and, in general terms, to his good deeds. Most of the deeds testified to were uncorroborated hearsay presented by those one would expect to support the Defendant. The testimony at best establishes the Defendant's character to be no more good or compassionate than society expects of the average individual.

Active Participation in Church and Community. Testimony indicated the Defendant had participated in community projects. Specifically one to beautify the downtown area of Winter Garden and a committee to explore racial tensions and minority housing in the Winter Garden area. Testimony also showed that for a period of time he served on a committee that mechanically produced the broadcast of Sunday church services and at one time sang in the church choir. None of this testimony establishes unusual participation in church and community activities.
We find no error in the weight the trial judge assigned to this mitigating evidence. The judge could properly consider the witnesses' relationships to the defendant and their personal knowledge of his actions in deciding what weight to give to their testimony.
Zeigler's final claim on this appeal is that the trial judge improperly overrode the jury's recommendation of life imprisonment in violation of Tedder v. State, 322 So.2d 908 (Fla. 1975). In support of this claim Zeigler argues that an override is improper absent a detailed showing supported by specific written findings as required by section 921.141(3), Florida Statutes (1989). He also argues the override is improper in light of the evidence established in mitigation. Zeigler points to the judge's findings *131 of no significant criminal history and a good prison record as well as the evidence Zeigler presented of his church and community involvement and his good character.
Initially, we reject Zeigler's implication that the death sentence in this case is not supported by specific written findings as required under section 921.141(3), Florida Statutes (1989). The trial judge's written sentencing order lists his reasons for finding the four statutory aggravating circumstances, the statutory mitigating circumstance, and the nonstatutory mitigating circumstance of a good prison record.[8] Further, the judge summarized the other evidence offered in mitigation and his reasons for giving it little to no weight.
A judge's override is not improper simply because a defendant can point to some evidence established in mitigation. In Tedder this Court held that "[i]n order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Tedder, 322 So.2d at 910. In this case, the evidence of mitigation is minuscule in comparison with the enormity of the crimes committed. The defendant not only murdered his own wife in order to obtain insurance proceeds on her life but also murdered three other people in an elaborate plan to cover up his guilt. We agree that virtually no reasonable person could differ as to the appropriateness of the death sentence in this case.[9]
Therefore, we affirm Zeigler's death sentence.
It is so ordered.
OVERTON, McDONALD, GRIMES and KOGAN, JJ., concur.
SHAW, C.J., and BARKETT, J., concur in result only.
NOTES
[1] Zeigler received two life sentences for murdering the Edwardses.
[2] Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).
[3] § 921.141(5)(b), (e), (f), (h), Fla. Stat. (1989).
[4] § 921.141(6)(a), Fla. Stat. (1989).
[5] We find no merit in Zeigler's argument that the judge abused his discretion by limiting the scope of Zeigler's attorney's testimony that it was his opinion that it was not unusual for Zeigler to purchase insurance without informing him.
[6] We have previously upheld the application of this factor where the defendant became entitled to insurance proceeds on a victim's life. Buenoano v. State, 527 So.2d 194 (Fla. 1988).
[7] Zeigler only challenges the application of this factor under the ex post facto clause. He does not challenge whether the facts support the existence of this factor beyond a reasonable doubt. The facts clearly support the finding of a heightened premeditation in this case. Zeigler procured the life insurance and guns several months before the murders. On the morning of the murders, he asked Mays to meet him in the store that night. That evening, he lured his wife and her parents to the store and murdered them. Then Zeigler met with Mays and another man, Felton Thomas, and took them to an orange grove to try the guns. They then went to Zeigler's home and then returned to the store where Zeigler killed Mays and attempted to kill Thomas.
[8] The trial judge did not set out written reasons for his finding that the cold, calculated, and premeditated factor was established by the evidence because he believed that he could not consider that aggravating factor.
[9] Our holding would be the same even if we did not apply the cold, calculated, and premeditated aggravating factor.